An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1316

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

ALICE JOPPA CEBULA,
    Plaintiff

v.

Buncombe County
No. 12 CVS 373

THE GIVENS ESTATES, INC.,
    Defendant

Appeal by plaintiff from order entered 3 July 2013 by Judge Alan Z. Thornburg in Buncombe County Superior Court. Heard in the Court of Appeals 9 April 2014.

> *Donald H. Barton, P.C., by Donald H. Barton, for Plaintiff.*

> *McGuire, Wood & Bissette, P.A., by Joseph P. McGuire, for Defendant.*

ERVIN, Judge.

Plaintiff Alice Joppa Cebula appeals from a trial court order granting summary judgment in favor of Defendant Givens Estates, Inc., with respect to the claims that she had asserted against Defendant. On appeal, Plaintiff contends that the trial court lacked jurisdiction to grant summary judgment in Defendant's favor on the grounds that this case was on appeal to this Court at the time that the order granting summary judgment

in Defendant's favor was entered and that the existence of a genuine issue of material fact concerning the date upon which she discovered that Defendant would not make the entrance and parking fee refund that she believed to be appropriate precluded a determination that Plaintiff's claims were barred by the applicable statute of limitations. After careful consideration of Plaintiff's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

Defendant operates a retirement community for the elderly known as Givens Estates.[1] On or about 7 September 2007, Plaintiff, who was 81 years old at the time, met with Kim Lawing, an individual performing sales functions for Defendant, to discuss the possibility that Plaintiff might begin living in the community. At that time, Plaintiff informed Ms. Lawing that she could only afford to pay the necessary fees associated with life in the community in the event that she was able to sell the home in which she currently resided.

---

[1]As a result of the fact that the issue raised by Plaintiff's appeal is whether the trial court properly granted summary judgment in Defendant's favor, the factual statement contained in the body of this opinion reflects the record viewed in the light most favorable to Plaintiff.

On 12 September 2007, Plaintiff entered into a residence and services agreement with Defendant. Plaintiff failed to read the residence and services agreement before signing it. According to the residence and services agreement, Plaintiff was required to pay a $279,400 entrance fee, ten percent of which was due upon signing and the remainder of which was due prior to the date upon which she began to occupy a unit in the retirement facility, and a $15,000 parking fee, both of which she paid in full. In addition, the residence and services agreement provided that, in the event that Plaintiff wished to terminate the agreement for any reason within thirty days after entering into the agreement, any monies that she had paid to Defendant would be fully refundable. In the event that Plaintiff wished to terminate the residence and services agreement after the end of this initial thirty day period, the refund to which Plaintiff was entitled would be calculated using a formula spelled out in that agreement. More specifically, according to Paragraph VII.E. of the residence and services agreement:

> **Amortization of the Entrance Fee**. Your Entrance Fee is partially refundable. The portion of the fee that is refundable to You will decline over time, at a rate of six percent (6%) upon the date of Occupancy of the Residence and two percent (2%) on the first (1st) day of each calendar month thereafter until fifty percent (50%) of the Entrance Fee remains. Regardless of the reason for termination, You will always be

> entitled to a refund of not less than fifty percent (50%) of Your Entrance Fee, less any non-standard costs requested by You, except as otherwise provided by this Agreement.

According to Plaintiff, Ms. Lawing informed her that the amortization clause only applied to a termination of the residence and services agreement resulting from death and never told Plaintiff that she would "forfeit all of her entrance fees and garage fees."

After executing the residence and services agreement and moving into Givens Estates, Plaintiff was unable to sell her prior home, a development that rendered her unable to make the monthly fee payments required under the residence and service agreement. As a result, Plaintiff notified Defendant on 24 August 2011 that she desired to leave Givens Estates, terminate the residence and services agreement, and obtain a refund of her entrance and parking fees in their entirety. In response, Defendant informed Plaintiff that the requested refund would not be made. According to Plaintiff, given her age and physical and mental condition, she did not understand the relevant contract provisions and would not have signed the residence and services agreement had she understood that the entrance and parking fees would not be fully refunded in the event that she voluntarily left Defendant's retirement facility.

## B. Procedural History

On 25 January 2012, Plaintiff filed a verified complaint in which she asserted claims against Defendant for rescission of the residence and services agreement based upon an unjust enrichment and unconscionability theory; cancellation of the residence and services agreement based upon misrepresentation and fraud; rescission of the residence and services agreement based upon undue influence, coercion, and duress; and unfair and deceptive trade practices. On 2 April 2012, Defendant filed an answer in which it denied the material allegations of Plaintiff's complaint and asserted various affirmative defenses, including, but not limited to, estoppel, quasi-estoppel, unclean hands stemming from Plaintiff's failure to read the residence and services agreement, laches, and the applicable statute of limitations.

As a result of Plaintiff's failure to provide certain discovery materials, Judge Marvin P. Pope, Jr., entered an order on 4 September 2012 granting Defendant's motion to compel discovery and requiring Plaintiff to pay $2,210 in attorney's fees to Defendant. *Cebula v. Givens Estates, Inc.*, No. 13-242, 2013 N.C. App. LEXIS 996 at *2-3 (2013). Plaintiff noted an appeal to this Court from Judge Pope's order. On 1 October 2013, this Court filed an opinion dismissing Plaintiff's appeal

as having been taken from an unappealable interlocutory order. *Id.* at *3-4.

On or about 18 June 2013, Defendant filed a motion seeking the entry of summary judgment in its favor. On 3 July 2013, the trial court entered an order granting Defendant's summary judgment motion. Plaintiff noted an appeal to this Court from the trial court's order.

## II. Substantive Legal Analysis

### A. Trial Court's Authority to Grant Summary Judgment

In her first challenge to the trial court's order, Plaintiff argues that the trial court lacked jurisdiction to hear and decide the issues raised by Defendant's summary judgment motion. More specifically, Plaintiff contends that her appeal from Judge Pope's order divested the trial court of any authority to grant summary judgment in Defendant's favor and asserts that we should invalidate the trial court's order for that reason. Plaintiff's contention lacks merit.

> When an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from.

N.C. Gen. Stat. § 1-294. In view of the fact that "[t]he perfection of, or docketing of, an appeal relates back to the

time of giving notice of the appeal and operates as a stay of proceedings within the meaning of the statute," a trial court is "without jurisdiction to proceed on the matter until the case is returned by mandate of the appellate court."  *Woodard v. N.C. Local Governmental Emps. Ret. Sys.*, 110 N.C. App. 83, 85, 87, 428 S.E.2d 849, 850-51 (1993).  As a result, Plaintiff contends that, because the trial court granted summary judgment in Defendant's favor prior to the issuance of the mandate reflecting our decision in connection with Plaintiff's appeal from Judge Pope's order, the trial court lacked the authority to hear and decide the issues raised by Defendant's summary judgment motion.

The fundamental problem with Plaintiff's argument is that it takes no account of our holding that Plaintiff's prior appeal had been taken from an unappealable interlocutory order.  As the Supreme Court has clearly stated:

> A litigant cannot deprive the Superior Court of jurisdiction to try and determine a case on its merits by taking an appeal to the Supreme Court from a nonappealable interlocutory order of the Superior Court. A contrary decision would necessarily require an acceptance of the paradoxical paralogism that a party to an action can paralyze the administration of justice in the Superior Court by the simple expedient of doing what the law does not allow him to do, *i.e.*, taking an appeal from an order which is not appealable.

*Veazey v. City of Durham*, 231 N.C. 357, 364, 57 S.E.2d 377, 382-83 (1950). Although this Court has stated, as Plaintiff notes, "'that an appeal, *even of an interlocutory order*, operates as a stay of all proceedings in the [lower court] relating to issues included therein until the matters are determined in the [appellate court],'" *Woodard*, 110 N.C. App. at 85, 428 S.E.2d at 850 (internal quotation marks omitted) (alterations and emphasis in original) (quoting *Lowder v. Mills, Inc.*, 301 N.C. 561, 580, 273 S.E.2d 247, 258 (1981)), this principle only applies "[w]hen a litigant takes an appeal to [an appellate court] from an appealable interlocutory order of the Superior Court and perfects such appeal in conformity to law." *Veazey*, 231 N.C. at 363, 57 S.E.2d at 382; *see also Velez v. Dick Keffer Pontiac-GMC Truck*, 144 N.C. App. 589, 591, 551 S.E.2d 873, 875 (2001) (quoting *Veazey*, 231 N.C. at 364, 57 S.E.2d at 383) (stating that ''[o]ur conclusion [that the trial court had the authority to enter an order compelling discovery when an appeal from a prior discovery-related order was pending in the appellate courts] finds full sanction in previous decisions . . . adjudging that[,] when an appeal is taken . . . from an interlocutory order of the Superior Court which is not subject to appeal, the Superior Court need not stay proceedings, but may disregard the appeal and proceed to try the action while the

appeal on the interlocutory matter is in the [appellate courts]'"); *T & T Dev. Co. v. S. Nat. Bank of S.C.*, 125 N.C. App. 600, 603, 481 S.E.2d 347, 349 (stating that, since the "plaintiffs had no right to appeal the granting of the motion *in limine*, the trial court was not deprived of jurisdiction and did not err in calling the case for trial and dismissing it when plaintiffs failed to offer any evidence"), *disc. review denied*, 346 N.C. 185, 486 S.E.2d 219 (1997). As a result, since *Woodard* involved an appeal taken from an appealable interlocutory order, 110 N.C. App. at 86, 428 S.E.2d at 851 (stating that, "[a]lthough normally the denial of a motion to dismiss is interlocutory and not immediately appealable, this Court has held that the doctrine of sovereign immunity presents a question of personal jurisdiction and an appeal of a motion to dismiss based on this ground is immediately appealable"), while Plaintiff's prior appeal in this case was taken from an unappealable interlocutory order, the principle upon which Plaintiff relies in challenging the trial court's order simply has no application in this instance. Thus, the trial court did not err by proceeding to hear and decide Defendant's summary judgment motion despite the fact that Plaintiff's appeal from Judge Pope's order was still pending in this Court.

## B. Validity of Trial Court's Decision
## to Grant Summary Judgment

Secondly, Plaintiff contends that the trial court erred by granting Defendant's summary judgment motion given that the record demonstrated the existence of genuine issues of material fact relating to the date upon which Plaintiff's claim against Defendant accrued for statute of limitations purposes. More specifically, Plaintiff contends that the statute of limitations applicable to her fraud and misrepresentation and her unfair and deceptive trade practices claims did not begin to run until she learned that Defendant would not act in accordance with this understanding, a date which was within three years of the date upon which she filed her action against Defendant.[2] Once again, we conclude that Plaintiff's argument lacks merit.

---

[2]As we have noted in the text of this opinion, Plaintiff asserted a number of different claims in her complaint. However, the only substantive challenge that she has advanced in opposition to the trial court's decision to grant summary judgment in Defendant's favor rests upon a contention that the trial court erred by refusing to allow her fraud and misrepresentation-based claims and her unfair and deceptive trade practices claim to proceed to trial. Although Plaintiff states in her brief that, "[a]s to any remaining issues presented by [the summary judgment motion], Plaintiff-Appellant would contend that her complaint and the alleged facts of the complaint present genuine issues of material fact for trial," Plaintiff has not advanced any legal or factual support for this contention. As a result, Plaintiff has waived any right to challenge the trial court's order granting summary judgment in favor of Defendant on any basis other than that discussed in the text of this opinion. *See* N.C.R. App. P. 28(b)(6) (providing that "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned"); *Belk v. Belk*, __ N.C. App. __, __, 728 S.E.2d 356, 372-73 (2012) (deeming the "respondent's arguments as to his

"Upon motion, summary judgment is appropriately entered where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). In evaluating the validity of a party's challenge to a trial court order ruling on a summary judgment motion, we "carefully scrutinize the moving party's papers and . . . resolve all inferences against him." *Id.* However, "[o]nce a defendant has properly pleaded the statute of limitations, the burden is then placed upon the plaintiff to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action." *Id.*

According to N.C. Gen. Stat. § 1-52(9), actions for fraud and misrepresentation must be brought within three years of the act giving rise to the action, with the plaintiff's action not "deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Actions brought

affirmative defenses abandoned, as respondent failed completely in his duty to follow the appellate rules and provide a coherent argument containing legal authority in support of that argument").

under Chapter 75 of the North Carolina General Statutes must be brought "within four years after the cause of action accrues." N.C. Gen. Stat. § 75-16.2. According to Plaintiff, Defendant acted in a fraudulent or deceptive manner when Ms. Lawing told her in 2007 that she would be entitled to a full refund of her entrance and parking fees in the event that she left Givens Estates for any reason other than death even though the residence and services agreement provided otherwise. Assuming that Plaintiff's fraud and misrepresentation and unfair and deceptive trade practices claims accrued in 2007, both of those claims would clearly be barred by the applicable statute of limitations. As a result, the ultimate issue raised by Plaintiff's challenge to the trial court's order is whether the claims that she persists in asserting against Defendant accrued at a later time.

In seeking to persuade us that her claims against Defendant are not time-barred, Plaintiff argues, in reliance upon the discovery rule embodied in the relevant statutory provisions, that her claims against Defendant did not accrue in 2007. More specifically, Plaintiff argues that, since she did not actually learn that the oral representations allegedly made by Ms. Lawing contradicted the language contained in the residence and services agreement until 2011, neither her fraud and

misrepresentation nor her unfair and deceptive trade practices claims are barred by the applicable statute of limitations. Plaintiff's contention lacks merit.

As a general proposition, a "cause of action [predicated upon allegedly fraudulent conduct] accrues upon discovery of the fraud or from the time it should have been discovered," with the issue of "[w]hether a plaintiff should have discovered the facts constituting fraud more than three years prior to the institution of the action ordinarily [being] a question for the jury." *N.C. Nat'l Bank v. Carter*, 71 N.C. App. 118, 124, 322 S.E.2d 180, 184 (1984). The same general rule appears to be applicable to fraud-based claims brought pursuant to N.C. Gen. Stat. § 75-1.1. *Shepard v. Ocwen Fed Bank, FSB*, 361 N.C. 137, 141-42, 638 S.E.2d 197 200 (2006) (holding that an unfair and deceptive trade practices claim resting upon allegations of usury should be subject to the statute of limitations applicable to usury based claims). "'Discovery' is defined as actual discovery or the time when the fraud should have been discovered in the exercise of due diligence." *Spears v. Moore*, 145 N.C. App. 706, 708, 551 S.E.2d 483, 485 (2001) (citing *Hyde v. Taylor*, 70 N.C. App. 523, 528, 320 S.E.2d 904, 908 (1984)). "Failure to exercise due diligence may be determined as a matter of law . . . where it is 'clear that there was both capacity and

opportunity to discover the [fraud or] mistake.'" *Id.* at 708-09, 551 S.E.2d at 485 (quoting *Huss v. Huss*, 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976)). As a result, in order to rely on the discovery rule to defeat Defendant's statute of limitations defense, Plaintiff was required to forecast evidence from which a finder of fact could determine that her failure to discover the position that Defendant took with respect to her right to obtain a full refund of the entrance and parking fees that she paid to Defendant in 2007 did not result from a lack of due diligence on her part. *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 585, 581 S.E.2d 68, 73 (2003) (stating that, "'when there is a dispute as to a material fact regarding when the plaintiff should have discovered the fraud, summary judgment is inappropriate, and it is for the jury to decide if the plaintiff should have discovered the fraud'") (quoting *Spears*, 145 N.C. App. at 708, 551 S.E.2d at 485).

According to well-established North Carolina law,

> one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained. If unable to read or write, he must ask that the paper be read to him or its meaning explained.

*Williams v. Williams*, 220 N.C. 806, 809-10, 18 S.E.2d 364, 366 (1942) (citations omitted). "It is well established in North Carolina that '[o]ne who signs a written contract without reading it, when he can do so[,] understandably is bound thereby unless the failure to read is justified by some special circumstances.'" *Marion Partners, LLC v. Weatherspoon & Voltz, LLP*, 215 N.C. App. 357, 359, 716 S.E.2d 29, 31 (2011) (first alteration in original) (quoting *Davis v. Davis*, 256 N.C. 468, 472, 124 S.E.2d 130, 133 (1962)). As a result, a litigant's "'duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in the absence of any mistake, fraud or oppression, is a circumstance against which no relief may be had, either at law or in equity.'" *Mills v. Lynch*, 259 N.C. 359, 362, 130 S.E.2d 541, 543-44 (1963) (quoting *Furst v. Merritt*, 190 N.C. 397, 402, 130 S.E. 40, 43 (1925)). We do not believe that Plaintiff has provided sufficient justification for her failure to read the residence and services agreement to preclude the entry of summary judgment in Defendant's favor.

As the undisputed evidence clearly reflects, Plaintiff did not read the residence and services agreement before signing it. Although she suggests that the record shows the existence of general issues of material fact concerning the extent to which

she should have discovered that Defendant did not intend to make a full refund of the entrance and parking fees that she paid when she began to reside at Givens Estates, Plaintiff has not forecast any evidence tending to show that Defendant did anything to prevent her from reading the residence and services agreement or that she lacked the capacity, as the result of age, ill health, mental limitations, or any other factor, to read and understand that document.  As a result, given the undisputed evidence tending to show that Plaintiff failed to read the relevant portions of the residence and services agreement before signing it in 2007 and the complete absence of any non-conclusory evidence tending to show that Plaintiff had an adequate justification for failing to read that document at that time, the record presented to the trial court in support of and in opposition to Defendant's summary judgment motion provides no basis for any determination that Plaintiff's claims against Defendant accrued at any time after 2007.

In an attempt to persuade us to reach a different result, Plaintiff notes that "'the failure of the defrauded person to use diligence in discovering the fraud may be excused where there exists a relation of trust and confidence between the parties,'" *Vail v. Vail*, 233 N.C. 109, 116, 63 S.E.2d 202, 207 (1951) (quoting 54 C.J.S., *Limitations of Actions*, § 194

(1948)), and argues that she reposed special confidence in Defendant due to their shared Christian faith. Although the record does reflect that Plaintiff is a Russian Orthodox Christian and Defendant is affiliated with the United Methodist Church, Plaintiff forecast no evidence tending to show that the underlying transaction at issue in this case was anything other than economic in nature. Plaintiff has not cited any authority tending to establish that a shared religious faith, without more, suffices to create a relationship of trust and confidence between the parties, and we know of none. As a result, the religious faith that Plaintiff shared with Defendant does not provide any justification for excusing Plaintiff's failure to read the residence and services agreement at the time that she began residing at the retirement community operated by Defendant. As a result, the trial court did not err by concluding that the claims that Plaintiff sought to assert against Defendant were barred by the applicable statute of limitations.

## III. Conclusion

Thus, we conclude that neither of Plaintiff's challenges to the trial court's order have any merit. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges GEER and STEPHENS concur.

Report per Rule 30(e).